FILED

2005 May-19  PM 05:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

JAMES KEETON,

     Plaintiff,

vs.                    CASE NO. CV-04-J-2886-J

THE PITTSBURG AND MIDWAY
COAL MINE COMPANY and
BLUE CROSS AND BLUE SHIELD
OF ALABAMA, INC.,

     Defendants.

### <u>MEMORANDUM OPINION</u>

Pending before the court is defendant Pittsburg and Midway Coal Mine Company's motion for summary judgment (doc. 18), memorandum of law (doc. 19) and evidence in support of said motion (doc. 20) and defendant Blue Cross and Blue Shield of Alabama's motion for summary judgment (doc. 21) and memorandum in support of said motion (doc. 22). The plaintiff filed evidence and a memorandum in opposition to Pittsurg and Midway Coal Mine Company's motion (docs. 23 and 24) and the defendant filed a reply (doc. 26).[1] Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

The plaintiff filed an amended complaint (doc. 9) in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001,

---

[1]The plaintiff did not respond to defendant Blue Cross and Blue Shield's motion for summary judgment.

*et seq.*, asserting that defendant Pittsburg and Midway Coal Mine Company ("P&M") wrongfully terminated benefits to his wife, retroactive to the date of their separation. Amended Complaint, ¶¶ 8-9.  The plaintiff alleges that defendant P&M was obligated to provide coverage for his wife until their divorce became final. *Id.*, ¶¶ 15-16.  The amended complaint requests this court to declare the rights and legal relationship of the parties under the Plan and order defendants to reinstate coverage to the plaintiff's wife (Count I), and further demands judgment against the defendants for the money he has expended to provide health insurance coverage for his wife due to her termination from coverage with defendants (Count II).

## FACTUAL BACKGROUND

The plaintiff and his wife, Susan Gail Keeton, separated on February 28, 2002, although the plaintiff had filed for divorce on October 14, 2001.  Plaintiff depo. at 10, 12, 42.  The plaintiff is employed by defendant P&M and has worked there since April 21, 1997.  *Id.*, at 15.  Defendant P&M provides health insurance to its employees and their dependents through the 2002 United Mine Workers of America ("UMWA") Benefit Plan (the "Plan"), which is self-funded.  Affidavit of Hicks, ¶ 2. The Plan incorporates health insurance and other benefits from the collective bargaining agreement between P&M and the UMWA which is called the Coal Wage Agreement. *Id*.  Pursuant to the Plan, "Eligible Dependents" include:

> A spouse who is living with or being supported by an eligible Employee or Pensioner.

> ....
> For purposes of this section D, a person shall be considered dependent upon an eligible Employee, Pensioner or spouse of such Employee, Pensioner or spouse provides over one-half of the support to such person.

Defendant exhibit 12 to plaintiff depo., at 4-5; defendant exhibit 13 to plaintiff depo.

*See also* Lowe depo. at 32-33.  The plaintiff did not have to pay an increased premium to provide coverage to his spouse or children.  Plaintiff depo. at 40.

Susan Keeton was removed from plaintiff's health insurance on June 10, 2003, when Jeffrey Lowe, manager of administration for P&M, found out that the plaintiff was no longer living with his wife.  Plaintiff depo. at 24-25, 28; Lowe depo. at 7, 10-11, 15; Hicks depo. at 10.[2]  The plaintiff never requested that she be removed from coverage.  Hicks depo. at 35.  Lowe and Hicks explained to plaintiff that his wife was no longer eligible for coverage because he was neither living with her nor providing support.  Lowe depo. at 11, 21-22; Hicks depo. at 12.  The plaintiff's original purpose in going to Lowe was to have his son removed from his insurance coverage because the son was no longer eligible.  Plaintiff depo. at 26-27, 35; defendant exhibit 2 to plaintiff depo.; Hicks depo. at 12.  Lowe took plaintiff to Tyron Hicks' office to confirm the eligibility requirements and complete the necessary form. Lowe depo. at 19-20; Hicks depo. at 10.

---

[2]Tyron Hicks is the Human Resources & Labor Relations Supervisor for defendant P&M. He reports directly to Jeff Lowe.  Lowe depo. at 9.

The plaintiff alleges that, at the time he completed the form to have his son removed from his insurance, he did not remember the notation "drop wife and son, no longer living together or providing support" being on the form. Plaintiff depo. at 32, 35. *See* defendant exhibit 2 to plaintiff depo. However, the plaintiff states everything else was on the form, including his wife's name, except for Hicks' signature. Plaintiff depo. at 78-79; defendant exhibit 2 to plaintiff depo. Hicks' agrees he wrote "drop wife and son" on the form. Hicks depo. at 14. The plaintiff returned to Lowe's office the next day to request that his wife be returned to coverage. Plaintiff depo. at 29.

In July, 2003, the plaintiff was court ordered to provide his wife with $1,500.00 per month alimony. Plaintiff depo. at 37-38; defendant exhibit 3 to plaintiff depo. The plaintiff returned to Lowe's office to ask that his wife be reinstated on the insurance. Plaintiff depo. at 79-80. The plaintiff wanted to keep coverage on his soon to be ex-wife due to a court order that he provide it. *Id*., at 29, 38-39; Hicks depo. at 36. Lowe told him that because he was not living with his wife, she could not be returned to coverage. Plaintiff depo. at 81. Because Susan Keeton was removed from coverage, the plaintiff had to pay her coverage through COBRA. *Id*., at 40-41; defendant exhibit 4 to plaintiff depo. Ms. Keeton has had coverage through COBRA since the day Hicks received her completed COBRA application and a check for the first month's coverage. Hicks depo. at 33-34.

The plaintiff served nineteen days in jail in September, 2003 on contempt charges, in part for not having his wife reinstated on his insurance and in part for not

4

paying alimony.[3]  Plaintiff depo. at 33, 36.  After he was released from jail, the plaintiff obtained a form from Hicks to have Susan Keeton put back on his insurance coverage.  *Id*., at 36, 53-54; Lowe depo. at 24-26, 36; Hicks depo. at 21.  Hicks actually provided the plaintiff the form in question more than once.  Hicks depo. at 22.  Under defendant P&M's benefit plan, as long as the plaintiff was providing more than half of his wife's support, she was eligible for coverage on his insurance.  Defendant exhibit 9 to plaintiff depo.  However, the form completed by his wife for reinstatement was not completed correctly.  Plaintiff depo. at 53-54, 68-69, 82-83; defendant exhibits 5, 6 and 9 to plaintiff depo.  Lowe explained that because the benefit plan required the employee to pay at least half the spouse's support for insurance coverage purposes, defendant P&M needed Susan Keeton's financial information.  Lowe depo. at 34.  He also needed documentation to support the amounts claimed on the form Susan Keeton completed.  *Id*., at 40-41; Hicks depo. at 23-24.

The UMWA benefit plan includes dispute resolution procedures.  Hicks' affidavit, ¶ 2.  The plaintiff filed a Resolution of Dispute ("ROD") on October 29, 2003, based on defendant P&M's failure to reinstate his wife on his insurance. Plaintiff depo. at 66-67; defendant exhibit 8 to plaintiff depo.; Lowe depo. at 32.  The ROD alleges that he is paying more than half of his wife's support and is still legally

---

[3]Pursuant to a July 29, 2003 court order, the plaintiff had to pay $1,500.00 per month as alimony.  Defendant exhibit 3 to plaintiff depo.  This order did not mention health care insurance.  No evidence of any court order requiring the plaintiff to pay health care insurance for Susan Keeton is before the court.

married to her, so she should be on his insurance.[4]  Plaintiff depo. at 75.  This claim

has not been finally resolved under the dispute resolution procedures of the UMWA

collective bargaining agreement with defendant P&M.  Hicks' affidavit, ¶¶ 2, 5.

According to the benefit plan, disputes are subject to the following procedures:

The Plan Administrator is authorized to promulgate rules and regulations to implement and administer the Plan, and such rules and regulations shall be binding upon all persons dealing with the Beneficiaries claiming benefits under this Plan.  The Trustees of the UMWA Health and Retirement Funds will resolve any disputes ... to assure consistent application of the Plan provisions under the 2002 NBCWA.  The Trustees shall develop procedures for the resolution of such disputes.  In the event the Trustees decide such dispute, such decision of the Trustees shall be final and binding on the parties.  If the Trustees are unable to resolve the dispute, such dispute shall be referred to a permanent arbitration panel of up to three members selected by mutual agreement of the UMWA and the BCOA and maintained by the Trustees.  A dispute referred in this manner shall be decided by one member of the arbitration panel, determined on a rotating basis, whose decision shall be final and binding on the parties.

Exhibit A to Hicks' affidavit, at 19.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[4]The Circuit Court of Walker County, Alabama, entered a final divorce decree in *Keeton v. Keeton*, DR 01-0550, on April 19, 2005.  Plaintiff's response to defendant P&M's motion for summary judgment, at 3 and 13.  The court questions whether the plaintiff has any ongoing duty to provide health insurance for her, given that she is no longer a "spouse."  If no such duty is continuing, the only issue left for the court is whether the plaintiff is entitled to recovery of his past expenditures for Susan Keeton to have COBRA coverage.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of  the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e).  In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The sole issue before the court is whether defendant P&M wrongfully refused to reinstate Susan Keeton on the plaintiff's health insurance.[5]  Because this case is

---

[5]The plaintiff makes an argument for the first time in his response concerning whether the benefit plan is consistent with the Coal Wage Agreement and ERISA.  The court finds the plaintiff has never plead such a claim.  The plaintiff also challenges for the first time in his response to defendant P&M's motion for summary judgment whether that defendant properly

brought under ERISA, the court applies the standards set forth in *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir.2004). However, the court does not need to determine whether the proper standard for review is arbitrary and capricious or heightened arbitrary and capricious. Under either standard, in considering defendant P&M's decision not to reinstate Susan Keeton on plaintiff's health insurance, the court must first determine, *de novo*, whether the plan administrator's decision was "wrong." *Bellsouth*, 373 F.3d at 1138; *see also HCA Health Systems v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir.2001). Based on the information that the plaintiff provided to the defendant, as well as to this court, the court is of the opinion that the decision is not wrong, for the reasons set forth below.

The plaintiff argues his wife should have been reinstated as a dependent on his health insurance. He was told that, in order to accomplish this, he had to be providing more than one half of her support. For this purpose, he was provided a form by Hicks which he has never completed. The plaintiff's wife completed the form, but provided no supporting information. Based on this, defendant P&M told the plaintiff it could

---

applied the terms of COBRA. Plaintiff's response, at 11-12. Again, such an issue is not properly before this court. *See e.g. In re Andrx Corporation, Inc*., 296 F.Supp.2d 1356, 1367 (S.D.Fla.2003), citing *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990) ("As the district court correctly noted, this claim was not raised in [the plaintiff's] second amended complaint, but, rather, was raised in response to the defendants' motions for summary judgment, and, as such, was not properly before the court."); *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment").

not reinstate Susan Keeton as a dependent.  The plaintiff took no further steps to provide the requested information to his employer.  *See* plaintiff's response at 6 ("the Plaintiff admits that he has been unable to provide P&M or the Trustees with any information concerning Mrs. Keeton's income or household expenses at any time since this matter arose in June of 2003..."); plaintiff affidavit, ¶¶ 8-9 .  Instead, he filed a ROD and, prior to receiving a final decision on that, he filed this litigation.  Given these facts, the court cannot conclude that the decision of defendant P&M was wrong, regardless of the standard by which that decision is reviewed.  *See HCA Health Systems,* 240 F.3d at 993; *Bellsouth,* 373 F.3d at 1138.

The plaintiff has failed to exhaust his administrative remedies, which is a prerequisite to suit under the law of this circuit.  *Counts v. American General Life and Accident Insurance Co.*, 111 F.3d 105, 107 (11th Cir.1997).  In his response, the plaintiff argues he should be exempt from the requirement that he exhaust his administrative remedies because the Trustees have yet to reach a decision.  Plaintiff's response, at 5.  Thus, the plaintiff argues his attempts at exhaustion are futile.  *Id.* Additionally, the plaintiff argues that the administrative process is "unlikely to result in an adequate remedy because the ROD only speaks to the contractual dispute raised

by it and fails to address the statutory inadequacy of the 2002 UMWA Benefit Plan."[6]
Plaintiff's response, at 5.  As the court noted above, the plaintiff has not properly
raised this claim.  The plaintiff also concedes that a literal reading of the plan
provisions could lead to a conclusion that the plaintiff's wife was not eligible for
coverage at the time she was removed from coverage.  Plaintiff's response, at 6.
While the court is of the opinion that the plaintiff has failed to exhaust his
administrative remedies, the court has reached the merits of this case.  Therefore, the
issue of exhaustion is moot.

Plaintiff's only explanation for naming Blue Cross as a defendant in this
litigation is that is "who I send the money to."  Plaintiff depo. at 85.  Plaintiff offers

---

[6]The plaintiff further states as follows:

The issue before the Court, and that issue which should properly be considered by
the Trustees, is not whether P&M has complied with the language of the Plan in
reaching its decision to terminate coverage for Mrs. Keeton, but whether the Plan
properly conforms to the provisions of ERISA and the intent of the Wage
Agreement.

Plaintiff's response, at 5-6.  The court disagrees.  The plaintiff has alleged no basis on which he
may challenge the provisions of the benefit plan, which is a contract between the UMWA union
and defendant P&M.  The plaintiff later refines this argument to explain he is challenging
whether the UMWA Benefit Plan could use the definition of "spouse and dependents" found in
the Dental Plan section of the Wage Agreement.  He states that the use of the restrictive
definition found in the Dental Plan is contrary to the purpose of ERISA.  Plaintiff's response, at
10.  As discussed at note 5, the court is of the opinion this argument has not been properly raised.
    Even if the plaintiff had raised this claim properly, the Coal Wage Agreement states that
"[t]his description is intended merely to highlight certain information; it is not a complete
statement of all of the provisions of the Plans and Trusts, nor is it intended to be a Summary Plan
Description as defined in the Employee Retirement Income Security Act of 1974, and is
qualified in its entirety by, and subject to the more detailed information contained in the Plans
and Trusts."  Coal Wage Agreement of 2002, at 50.  In other words, the Wage Agreement merely
summarizes, to no legal effect, the information containing in the UNMA Benefit Plan.

no evidence that defendant Blue Cross could, independently of defendant P&M, reinstate Susan Keeton on the plaintiff's health insurance.  Defendant Blue Cross removed Susan Keeton as a dependent eligible for coverage based on defendant P&M's instruction.  No evidence before the court establishes that defendant Blue Cross would not reinstate coverage for Susan Keeton should it be instructed to do so by defendant P&M.  As such, the plaintiff has failed to state a claim upon which relief may be granted against this defendant.  *See* Rule 12(b)(6), Fed.R.Civ.Pro.

In consideration of the foregoing, the court shall grant both defendants' motions for summary judgment by separate Order.

**DONE** this the 19th day of <u>May</u>, 2005.


_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE